UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELOY MASCORRO,<br><br>                               Plaintiff,<br><br>v.<br><br><br>THE CITY OF SAN DIEGO, et al.,<br><br>                               Defendants. | Case No.:  21-cv-1725-RSH-DDL<br><br>**ORDER**<br><br>[ECF Nos. 77, 81, 82, 83, 95] |

Pending before the Court are five motions: (1) a motion to dismiss filed by the City of San Diego (the "City"), as well as individual police officers and a park ranger (collectively, the "City Defendants"),[1] ECF No. 81; (2) a motion to dismiss filed by Joshua Culver, ECF No. 82; (3) a motion to dismiss filed by Universal Protection Service, LP d/b/a Allied Universal Security Services, sued as Allied Universal Security ("Allied"), ECF No. 83; (4) a motion for judgment on the pleadings filed by Downtown San Diego Partnership,

---

[1]    As used herein, the "City Defendants" refers to the moving parties: the City, San Diego Police Department Officers Brian Moreno, Felix Campante, Geoffrey Decesari, MacKenzie Fuggett, Tyler Hamby, and Park Ranger Zadok Othniel.

sued as San Diego DTP ("Downtown Partnership"), ECF No. 95; and (5) Plaintiff's motion to effectuate service or re-service of process, ECF No. 77. The Court rules on these motions as set forth below.

## I.    BACKGROUND

Plaintiff Eloy Mascorro, proceeding pro se, filed this lawsuit on October 5, 2021 against the City, the San Diego Police Department, the San Diego Chief of Police, and unnamed police officers.[2] ECF No. 1. The Complaint is based on an incident on October 6, 2020, in which San Diego police allegedly "unlawfully detained, searched, seized and arrested" Plaintiff while he was visiting Balboa Park in San Diego. *Id.* at 2. The Complaint further alleged that that the police knowingly arrested him without probable cause, that they wrote false police reports about the incident, and that the arrest was made in retaliation for Plaintiff's prior complaints of police misconduct. *Id.* at 2–3. The Complaint also alleged that the police unlawfully seized Plaintiff's property and thereafter damaged it, which Plaintiff discovered when he retrieved his property on October 15, 2020. *Id.* at 2. The Complaint did not identify specific causes of action, but alleged that "[o]n 10/6/2020 my 1st, 2nd, 4th, 6th and 14th amendment rights were violated," and further sought recovery of a civil penalty under the Bane Civil Rights Act. *Id.* at 2, 4.

On May 11, 2023, the Court dismissed the case without prejudice for failure to timely effectuate service of process. ECF No. 35. Plaintiff appealed that order. On April 29, 2025, the Court of Appeals vacated the order, and remanded the case with instructions to this Court to forward process to the U.S. Marshals Service ("USMS") for service on the City. ECF No. 54 at 2. The mandate issued on May 19, 2025. ECF No. 55. On May 22,

---

[2]    This case is related to two other federal lawsuits brought by Plaintiff in this Court, Case Nos. 21-cv-1427 and 21-cv-2012. In the former case, summary judgment for the defendants was entered on January 22, 2025, and Plaintiff has appealed. The latter case is pending before this Court.

2025, this Court directed service by the USMS. ECF No. 56. On May 28, 2025, the USMS served the Complaint on the San Diego City Attorney's Office. ECF No. 57.

On June 18, 2025, Plaintiff filed the Amended Complaint, his operative pleading. ECF No. 58. The Amended Complaint names over thirty defendants: (1) the City; (2) the San Diego Chief of Police; (3) Officer #7176; (4) Officer #6870; (5) Officer #7028; (6) Officer #6294; (7) Officer Williams; (8) Officer Richardson; (9) Officer D. Stone; (10) Officer Felix Campante; (11) Officer M. Wright; (12) Officer Brian Moreno; (13) Officer Tyler Hamby; (14) Lieutenant Nicholas Dedonato; (15) Lieutenant Geoffrey Decesari; (16) Park Ranger Zadok E. Othniel; (17) Park Ranger John Doe #19; (18) Officer Bunch; (19) Supervisor John Doe #5448; (20) Officer John Doe #5113; (21) Sergeant John Doe #7689; (22) Sergeant Davis #6781; (23) IA Sergeant McCool; (24) IA Lieutenant Rivera; (25) Officer Newman; (26) Officer Nunez; (27) Sergeant MacKenzie Fugett; (28) Josh Culver; (29) San Diego DTP; (30) Allied Universal Security; (31) San Diego DTP Employees and Supervisors 1-20; (32) Allied Universal Security Employees and Supervisors 1-20; (33) San Diego Police Department Dispatcher John Does 1-20; and (34) San Diego Police Department Dispatch Supervisor John Does 1-20.

While Plaintiff's original Complaint was based his October 6, 2020 arrest and discovery when he was released from jails days later that his seized property had been damaged, Plaintiff's Amended Complaint alleges over thirty incidents involving Plaintiff spanning from March 2020 through February 2025. Whereas the original Complaint did not specifically identify any causes of action, the Amended Complaint brings eleven causes of action: (1) unlawful arrest in violation of the Fourth Amendment; (2) unlawful search and seizure of property in violation of the Fourth Amendment; (3) retaliation in violation of the First Amendment; (4) intentional misrepresentation; (5) perjury and fabrication of evidence in violation of the Fourteenth Amendment; (6) battery; (7) deliberate indifference to serious medical needs in violation of the Eighth Amendment; (8) *Monell* liability; (9) violation of the Bane Civil Rights Act, Cal. Civ. Code § 52.1; (10) conversion; and (11)

denial of access to the courts in violation of the First Amendment.[3] The Amended Complaint identifies only some of the incidents that serve as the partial basis for only some of the claims.

Three defendants or sets of defendants have filed motions to dismiss the FAC: (1) the City Defendants, ECF No. 81; (2) Joshua Culver, ECF No. 82; and (3) Allied, ECF No. 83. Defendant Downtown Partnership has filed a motion for judgment on the pleadings. ECF No. 95. Plaintiff has opposed these motions and Defendants have filed replies. ECF Nos. 86, 89, 90, 92, 93, 94, 96, 97.

Plaintiff has filed a motion for an order directing service or re-service by the USMS. ECF No. 77. His motion is unopposed. *See* Docket.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) is read in conjunction with Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum, a complaint must allege enough facts to provide "fair notice" of both the particular claims being asserted and "the grounds upon which [those claims] rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007).

In deciding a motion to dismiss, all material factual allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). A court, however, need not accept all conclusory allegations as true. Rather it must "examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978

---

[3]    Claims One, Two, Three, Five, Seven, Eight, and Eleven are brought pursuant to 42 U.S.C. § 1983. The remaining claims are state law claims.

F.2d 1115, 1121 (9th Cir. 1992). A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

A complaint by a plaintiff proceeding pro se is "held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). Pro se pleadings are construed liberally. *Id.* Nonetheless, courts may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). A pro se litigant's pleadings still "must meet some minimum threshold in providing a defendant with notice of what it is that they allegedly did wrong." *See Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

## B.    Motion to Dismiss for Insufficient Service of Process

Federal Rule of Civil Procedure 12(b)(5) allows a defendant to move to dismiss for "insufficient service of process." "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under [Federal Rule of Civil Procedure] 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988); *see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Although "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint . . . without substantial compliance with Rule 4 neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction." *Direct Mail*, 840 F.2d at 688 (internal quotation marks and citation omitted). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

//

As to the timing of service, Federal Rule of Civil Procedure 4(m) provides in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

## III.    ANALYSIS

### A.    Statute of Limitations

Defendants' motions argue that some or all of the claims against them are time-barred. The Court addresses these arguments first.

#### 1.    *Applicable Law*

"The statute of limitations for section 1983 actions is determined by state law." *Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995). "Section 1983 actions are characterized as personal injury actions for statute of limitations purposes." *Id.* The statute of limitations for personal injury actions in California is two years. Cal. Civ. Proc. Code § 335.1; *see also Owens v. Okure*, 488 U.S. 235, 249–50 (1989) ("[W]here state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions."); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (applying § 335.1's two-year limitations period to Section 1983 claim). In contrast, "[f]ederal law[] governs when civil rights claims accrue." *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955 (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

For Bane Act claims arising from personal injury, a two-year statute of limitations applies. *See Swadener v. California*, No. 24-cv-283-DMS-MSB, 2025 WL 1095377, at *3

(S.D. Cal. Mar. 3, 2025). Under California law, battery is subject to a two-year statute of limitations. *See* Cal. Civ. Proc. Code. § 335.1 (two-year statute of limitations for "assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another"). Intentional misrepresentation has a three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(d) (three-year statute of limitations for "[a]n action for relief on the ground of fraud," and the cause of action does not accrue "until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake"). Conversion has a three-year statute of limitations. *See* Cal. Civ. Proc. Code § 338(c) (three-year statute of limitations for an action "for taking, detaining, or injuring goods or chattel"). Under California law, "ordinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191, (2013) (internal quotation marks omitted).

For purposes of calculating the statute of limitations where a pleading is amended, Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides that an amendment "relates back to the date of the original pleading" when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[4] The Ninth Circuit has explained, citing the advisory committee notes to the rule, that "Rule 15(c)(1) incorporates the relation back rules of the law of a state when that state's law provides the applicable statute of limitations and is more lenient. As a result, if an amendment relates back under the state law that provides the applicable statute of limitations, that amendment relates back under Rule 15(c)(1) even if

---

[4]    The City Defendants appear to argue that the "relation back" doctrine governs whether a complaint may be amended, such that any claims should be dismissed if "they were brought for the first time in the FAC and do not relate back to the [Complaint]." ECF No. 81 at 13–15. This argument misconstrues the doctrine. Whether a complaint may be amended before trial is governed by Rule 15(a). The "relation back" rules of Rule 15(c) govern the circumstances under which allegations in an amended pleading may borrow the filing date of the original pleading for purposes of satisfying the statute of limitations.

the amendment would not otherwise relate back under the federal rules." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1200 (9th Cir. 2014). In *Butler*, the Ninth Circuit articulated the federal relation back rule as follows:

> In order for an amended complaint to relate back under Rule 15(c)(1)(C), the following conditions must be met: "(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it." *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). Additionally, the second and third requirements must have been fulfilled within 120 days after the original complaint is filed, as prescribed by Federal Rule of Civil Procedure 4(m). *See* [*Hogan v. Fischer*, 738 F.3d 509, 517 (2nd Cir.2013)] (indicating that the fourth requirement is met when " 'the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and ... the original complaint [was] filed within the limitations period.'") (quoting *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468–69 (2d Cir.1995)).

*Id*. at 1202. The Ninth Circuit also explained the California rule:

> California law provides the applicable statute of limitations here. Amendments of pleadings under California law are generally governed by California Civil Procedure Code § 473(a)(1). *See Bd. of Trs. of Leland Stanford Jr. Univ. v. Superior Ct.*, 57 Cal. Rptr. 3d 755, 761–62 (Ct. App. 2007). Section 473(a)(1) does not contain any express provision for relation back of amendments, and California courts have held that it "does not authorize the addition of a party for the first time whom the plaintiff failed to name in the first instance." *Kerr–McGee Chem. Corp. v. Superior Ct.*, 206 Cal. Rptr. 654, 656 (Ct. App. 1984). Under California Civil Procedure Code § 474, however, California courts have recognized that "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 22 Cal. Rptr. 3d 453, 457 (Ct. App. 2004) . . . . For § 474 to apply, however, the plaintiff must be "genuinely ignorant" of the defendant's identity at the

time the original complaint is filed. *Woo v. Superior Ct.*, 89 Cal. Rptr. 2d 20, 25 (1999).

*Id.* at 1201–02.

As discussed above, Plaintiff's original Complaint was filed on October 5, 2021, and raised constitutional and Bane Act claims based on an incident occurring on October 6, 2020. The Amended Complaint was filed on June 18, 2025. To the extent that the Amended Complaint asserts claims arising out of other incidents, those claims are timely to the extent they accrued after June 18, 2023—or in the case of Plaintiff's claims for intentional misrepresentation or conversion, to the extent they accrued after June 18, 2022.

### 2. Culver

The Complaint did not name Culver as a defendant, but mentioned him by name, alleging that he made false or unsubstantiated statements to the police that resulted in Plaintiff's arrest on October 6, 2020. ECF No. 1 at 3. The Amended Complaint makes similar allegations but now names Culver as a defendant in Claims Four (intentional misrepresentation) and Nine (Bane Act). ECF No. 58 at 12–13, 19, 22.

Culver argues that Plaintiff is barred from adding him as a defendant over four years after the incident; that there is no basis for "relation back" under federal or California law; and that there is no basis for tolling the statute of limitations. Plaintiff's opposition does not respond to these arguments. The Court agrees with Culver that Plaintiff's claims are filed outside the statutory period and are time-barred. The claims in the Amended Complaint do not relate back to the filing of the Complaint under either federal or California law; Plaintiff was not mistaken as to Culver's identity, having mentioned him in the timely filed Complaint but also having declined to sue him. In light of this, allowing Plaintiff to add Culver at this time would be unfairly prejudicial. The Court therefore dismisses Plaintiff's claims against Culver as untimely.[5] *See Milgrim v. Garcia*, No. 24-

---

[5] The Court declines to address the remainder of Culver's arguments for dismissal.

1836, 2025 WL 2017471, at *2 (9th Cir. July 18, 2025) (holding plaintiff's claims against officer defendant did not relate back where there was no genuine dispute plaintiff was aware of officer's name prior to end of statute of limitations period).

### 3. Allied

The Complaint did not name Allied as a defendant. The Amended Complaint contains allegations against Allied in connection with two incidents. On June 3, 2022, "a security guard employed by The Alexan (likely an Allied Universal Security Defendant) threatened Plaintiff, seized his bicycle, and attempted to damage it and other personal belongings." ECF No. 58 at 11. On May 20, 2023, "an unnamed security guard (like a DTP or Allied Universal Security Defendant) approached Plaintiff, falsely stated the Balboa Park Club Building was private property, and was recorded making a false report to the police for alleged drug use after Plaintiff refused to leave." *Id.* at 10. The Amended Complaint names Allied as a defendant in Claims Four (intentional misrepresentation), Six (battery), Nine (Bane Act), and Ten (conversion). *Id.* at 19–23.

Allied argues that the battery, Bane Act, and conversion claims asserted against it are untimely. ECF No. 83-1 at 5–13. Plaintiff does not dispute that these claims are based on conduct outside the statutory periods for each claim, but responds that the "relation back" doctrine should apply because "the claims against Allied arise from the same series of events as the claims against the other defendants." ECF No. 89 at 3. However, Plaintiff failed to name Allied in the Complaint, and Plaintiff's amended claims against Allied do not arise out of the conduct alleged in the Complaint. Indeed, the incidents involving Allied in the Amended Complaint are alleged to have occurred *after* Plaintiff filed his Complaint. The Court therefore dismisses Plaintiff's Claims Six, Nine, and Ten against Allied as untimely.[6]

---

[6] The Court declines to address the remainder of Allied's arguments for dismissal directed to these three claims. The Court addresses Allied's argument for dismissal of Claim Four (intentional misrepresentation) further below.

### 4. *Downtown Partnership*

The Complaint did not name Downtown Partnership as a defendant. The Amended Complaint contains allegations against Downtown Partnership based on the May 20, 2023 incident discussed above, in which "an unnamed security guard (like a DTP or Allied Universal Security Defendant) approached Plaintiff, falsely stated the Balboa Park Club Building was private property, and was recorded making a false report to the police for alleged drug use after Plaintiff refused to leave." ECF No. 58 at 10. The Amended Complaint names Downtown Partnership as a defendant in Claims Four (intentional misrepresentation), Six (battery), Nine (Bane Act), and Ten (conversion). *Id.* at 19, 22–23.

Downtown Partnership argues that the battery and Bane Act claims asserted against it are untimely. ECF No. 95-1 at 7–8. Plaintiff does not dispute that these claims are based on conduct outside the statutory period, but argues that the allegations in the Amended Complaint "relate back" to the reference to "security guards" in the Complaint, which Plaintiff describes as a "placeholder." ECF No. 96 at 2. The Complaint indeed refers to a person called "Grace the security guard," ECF No. 1 at 3, but it is in the context of an altogether different incident—Plaintiff's arrest on October 6, 2020, for which the allegations in the Amended Complaint do not implicate Downtown Partnership. Indeed, the incident involving Downtown Partnership in the Amended Complaint are alleged to have occurred *after* Plaintiff filed his Complaint. The Court therefore dismisses Plaintiff's Claims Six and Nine against Downtown Partnership as untimely.[7]

### 5. *The City Defendants*

The City Defendants argue that Plaintiff's claims against Park Ranger Zadok Othniel are time-barred. ECF No. 81 at 16. The Complaint did not mention Othniel. The Amended

---

[7]    The Court declines to address the remainder of Downtown Partnership's arguments for dismissal directed to these two claims. The Court addresses Downtown Partnership's argument for dismissal of Claims Four (intentional misrepresentation) and Ten (conversion) further below.

Complaint alleges a single incident involving Othniel: On April 17, 2021, at a building in Balboa Park, Othniel "ordered Plaintiff to leave a public bench, falsely claiming the San Diego Fire Department had reserved the patio for an event." ECF No. 58 at 9. The Amended Complaint names Othniel as a defendant in Claims Three (First Amendment – retaliation), Four (intentional misrepresentation), Six (battery), and Nine (Bane Act). *Id.* at 19, 20, 22.

Plaintiff does not dispute that his claims against Othniel are based on conduct outside the statutory period, but appears to argue that the allegations should relate back because "[t]he FAC's claims stems from the same core facts—the events of October 6, 2020, and subsequent actions of City employees—and the City had general notice from the outset." ECF No. 86 at 3. However, Plaintiff failed to name Othniel in the Complaint, and Plaintiff's amended claims against Othniel do not arise out of the conduct alleged in the Complaint. The Court therefore dismisses all claims against Othniel.

## B. Adequacy of Pleading

The Court next addresses arguments made in the motions filed by the City Defendants, Allied, and Downtown Partnership based on the adequacy of the Amended Complaint.

### 1. The City Defendants

The City Defendants argue, in general terms, that "Plaintiff's allegations against City Officer Defendants in the FAC do not meet either the *Iqbal* or *Twombly* pleading standards." ECF No. 81 at 15. This argument is conclusory, and fails to engage the specific allegations or claims in the Amended Complaint. The argument also appears to be based on mistaken assumption that claims in the Amended Complaint must be traceable to claims in the original Complaint in order to state a claim. *See id.* ("Plaintiff's FAC contains specific factual allegations that cannot be fairly traced to allegations made in his OC."). The Court addresses this argument herein only to the extent the City Defendants provide additional specificity.

//

21-cv-1725-RSH-DDL

a.    <u>Bane Act</u>

The City Defendants argue that Plaintiff's Bane Act claim (Claim Nine) is inadequately pleaded. ECF No. 81 at 16–17.

The Thomas Bane Civil Rights Act ("Bane Act") is codified in California Civil Code § 52.1. "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law.'" *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 791–92 (Ct. App. 2017) (quoting Cal. Civ. Code § 52.1). Violations of the federal and California Constitution are all Bane Act violations. *See* Cal. Civ. Code § 52.1(b). "The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022). The Ninth Circuit has held that "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).

Here, the Amended Complaint does not specify which incidents are the basis of the Bane Act claim, the constitutional violations that allegedly occurred in each of those instances, or the defendants implicated in each violation during each of those incidents. Nor does it plead facts for each of those incidents plausibly establishing that each identified defendant had a specific intent to violate a constitutional right. The Court therefore dismisses Claim Nine as to all Defendants for failure to state a claim, and will grant Plaintiff leave to amend as set forth below.

//

//

//

### b. *Monell* Liability

The City Defendants also argue that Plaintiff's *Monell* claim (Claim Eight) fails to adequately plead the elements of a failure to train claim. ECF No. 81 at 18–20.[8]

A municipality may not be vicariously liable under § 1983 for an injury caused by its employee or agent. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* A plaintiff may recover under *Monell* under one of three theories. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id.* at 1249 (quoting *Monell*, 436 U.S. at 708). Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id.* Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 1250 (internal quotations omitted).

Here, Plaintiff's *Monell* claim is based on an alleged failure to adequately train and supervise. ECF No. 58 at 21. A "[f]ailure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir.

---

[8] Plaintiff's *Monell* claim is asserted against the City and the San Diego Chief of Police, in the police chief's official capacity. ECF No. 58 at 21–22. An official capacity suit against the San Diego Chief of Police is functionally a claim against the City. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

2021). "Mere negligence will not suffice to show Monell liability." *Id.* "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (internal quotation marks omitted). Pleading a failure to supervise has similar requirements. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("We see no principled reason to apply a different standard to inadequate supervision."); *Russell v. City of San Diego*, No. 24CV0527-GPC(SBC), 2025 WL 297034, at *7 (S.D. Cal. Jan. 24, 2025) ("A claim of failure to supervise and discipline is subject to the same standard as a failure to train claim.").

Here, the Amended Complaint does not specify which incidents are the basis of the failure to train or failure to supervise claim; does not establish a constitutional violation in connection with each incident, let alone a pattern of similar violations; and makes no non-conclusory allegations about the City's training or supervision policy or the injuries resulting from those policies. The Court therefore dismisses Claim Eight for failure to state a claim, and will grant Plaintiff leave to amend as set forth below.

c.    Claim presentation requirement for state law claims

The City Defendants argue that the Plaintiff's state law claims should be dismissed against them because Plaintiff has failed to establish compliance with the claims presentation requirement of the California Government Claims Act.

The California Government Claims Act, Cal. Gov't Code § 810 et seq., "is a comprehensive statutory scheme that sets forth the liabilities and immunities of public entities and public employees for torts." *Cordova v. City of Los Angeles*, 61 Cal. 4th 1099,

1104–05 (2015) (internal quotation marks omitted). "In order to bring suit for damages against a public entity, the California Government Claims Act requires that a plaintiff give notice to the public entity with written claims and that the public entity reject those claims." *Brewster v. City of Los Angeles*, No. EDCV 14-2257 JGB (SPx), 2020 WL 5991621, at *11 (C.D. Cal. July 14, 2020) (citing Cal. Gov. Code §§ 945.4, 905, 910); *see also Nguyen v. Los Angeles Cnty. Harbor/UCLA Med. Ctr.*, 8 Cal. App. 4th 729, 732 (Ct. App. 1992) ("The presentation of a claim to a public entity and its rejection are prerequisites to maintaining suit against the entity."). The purpose of the requirement is "not to prevent surprise like judicial statutes of limitations," but instead "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1122 (Ct. App. 2020) (citations omitted). The purpose of the claims statutes is also to "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." *Id.* (citations omitted). "Failure to comply with the mandatory requirements [of the California Government Claims Act] is fatal to the cause of action." *Nguyen*, 8 Cal. App. 4th at 732. "[A] claim under Government Code section 910 is sufficient if (1) there is some compliance with all of the statutory requirements; and (2) the claim discloses sufficient information to enable the public entity adequately to investigate the merits of the claim so as to settle the claim, if appropriate." *Cnty. of Los Angeles v. Superior Court*, 159 Cal. App. 4th 353, 360 (Ct. App. 2008) (internal quotation marks omitted).

Section 910 of the California Government Code requires that claim to include, among other things, "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," Cal. Gov't Code § 910(c); "[a] general description of the … injury, damage or loss incurred so far as it may be known at the time of presentation of the claim," *id.* § 910(d); and "[t]he name or names of the public employee or employees causing the injury, damage, or loss, if known," *id.* § 910(e). "If a plaintiff relies on more than one theory of recovery against the [governmental agency], each cause

1  of action must have been reflected in a timely claim. In addition, the factual circumstances
2  set forth in the written claim must correspond with the facts alleged in the complaint; even
3  if the claim were timely, the complaint is vulnerable to a demurrer [or motion for judgment
4  on the pleadings] if it alleges a factual basis for recovery which is not fairly reflected in the
5  written claim." *Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431,
6  434 (Ct. App. 1988) (quoting *Nelson v. State*, 139 Cal. App. 3d 72, 79 (Ct. App. 1982)). A
7  claim must be presented "not later than six months after the accrual of the cause of action."
8  Cal. Gov't Code § 911.2.

9      The Government Claims Act also applies to claims against public employees and
10  former public employees for acts or omissions committed within the scope of their
11  employment as public employees. Cal. Gov't Code § 950.2 (except as otherwise provided,
12  "a cause of action against a public employee or former public employee for injury resulting
13  from an act or omission in the scope of his employment as a public employee is barred if
14  an action against the employing public entity for such injury is barred …"); *see also Olson
15  v. Manhattan Beach Unified Sch. Dist.*, 17 Cal. App. 5th 1052, 1055 n.1 (2017) ("The
16  defense of noncompliance with the Government Claims Act also applies to the claims
17  against [individual defendant public employee].").

18      The Amended Complaint does not allege compliance with the Government Claims
19  Act. Plaintiff's opposition does not argue that he complied with the requirement, nor does
20  it otherwise respond to the City Defendants' argument. The Court concludes that the
21  Amended Complaint fails to state a claim against the City Defendants as to Claims Four
22  (intentional misrepresentation), Six (battery), Nine (Bane Act), and Ten (conversion). *See
23  Lacoste v. Cnty. of Los Angeles*, No. CV 23-4917-DMG (AGRX), 2025 WL 2994712, at
24  *3 (C.D. Cal. Aug. 29, 2025) ("Because [plaintiff's] FAC contains no allegations that could
25  demonstrate she complied with the Government Claims Act's presentment requirement,
26  her state law claims must be dismissed.").

27      //
28      //

### 2.    *Allied*

Allied argues that the Amended Complaint fails to adequately plead a claim for intentional misrepresentation (Claim Four) against Allied. ECF No. 83-1 at 4–5.

Under California law, a claim for fraud or intentional misrepresentation "must allege the following elements: (1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (Ct. App. 1996); *see also* Judicial Council of Cal. Civ. Jury Instr. No. 1900 (Intentional Misrepresentation) (2025). "It is settled that a plaintiff, to state a cause of action for deceit based on a misrepresentation, must plead that he or she actually relied on the misrepresentation." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1088 (1993) (internal citations omitted).

Allied argues that the Amended Complaint, in alleging that on May 20, 2023 "an unnamed security guard (like a DTP or Allied Universal Security Defendant)" made a false report to the police: (1) does not allege justifiable reliance by Plaintiff, or indeed by anyone, on an alleged false statement, and it is clear that Plaintiff did *not* rely on the alleged statement; and (2) does not allege any resulting damage. ECF No. 83-1 at 4–5. Plaintiff's opposition fails to meaningfully respond to these arguments. ECF No. 89 at 2–3. Additionally, the Amended Complaint does not allege that the security guard in fact worked for Allied; instead, Plaintiff merely alleges that the guard was "*likely* a DTP or Allied Universal Security Defendant." ECF No. 58 at 10 (emphasis added).

The Court concludes that Plaintiff fails to state a claim for intentional misrepresentation against Allied, and dismisses Claim Four as to Allied.[9]

//

//

---

[9]    The Court declines to address Allied's remaining arguments for dismissal of this claim.

### 3.    *Downtown Partnership*

Downtown Partnership argues that the Amended Complaint fails to adequately plead claims for intentional misrepresentation (Claim Four) or conversion (Claim Ten) against Downtown Partnership. ECF No. 95-1 at 8–9, 11.

The Court has set forth in the preceding section the elements of a claim for intentional misrepresentation under California law. Plaintiff's claim against Downtown Partnership for intentional misrepresentation is identical to his claim against Allied—Plaintiff sued both Allied and Downtown Partnership because he was not sure whether one of them employed the "unnamed security guard" involved in the May 20, 2023 incident. *See* ECF No. 58 at 10. For the reasons set forth above, The Court concludes that Plaintiff also fails to state a claim for intentional misrepresentation against Downtown Partnership, and dismisses Claim Four as to Downtown Partnership.

"Conversion is the wrongful exercise of dominion over the property of another." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010) (quoting *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543 (1996)). "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* (citation omitted). Downtown Partnership argues that Plaintiff has not alleged any facts showing that Downtown Partnership interfered with Plaintiff's right to possess his property. ECF No. 95-1 at 11. Plaintiff does not meaningfully respond to this argument. ECF No. 96 at 3. The Court concludes that Plaintiff fails to state a claim for conversion against Downtown Partnership, and dismisses Claim Ten as to Downtown Partnership.

### C.    **Leave to Amend**

As set forth above, the Court: (1) dismisses all claims against Culver, Allied, Downtown Partnership, and Othniel based on statute of limitations and/or failure to adequately plead a claim; (2) dismisses Claims Eight (*Monell*) against the City and Nine (Bane Act) against the City Defendants for failure to adequately plead a claim; and (3)

dismisses the state-law claims, Claims Four (intentional misrepresentation), Six (battery), Nine (Bane Act), and Ten (conversion), against the City Defendants for failure to comply with the claims presentation requirement of the California Government Claims Act. Plaintiff has requested leave to amend in the event of dismissal.

"A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015). Based on the allegations in the Complaint and the Amended Complaint, and the briefing on Defendants' motions, including Plaintiff's oppositions, the Court concludes that the following deficiencies cannot be cured by amendment: (a) Plaintiff's failure to plead a timely cause of action against Culver or Othniel; (b) Plaintiff's failure to plead a timely battery, Bane Act, and conversion claim against Allied or a timely battery and Bane Act claim against Downtown; and (c) Plaintiff's failure to comply with the California Government Claims Act as to his state-law claims against the City Defendants. The Court therefore declines leave to amend to state additional claims against Othniel, Culver, or additional state-law claims against the City Defendants. Plaintiff is granted leave to amend as to Claims Eight and Nine against the City Defendants, Claim Four against Allied and Downtown, and Claim 10 against Downtown.

With the foregoing limitation, within ***forty-five (45) days*** of the date of this order, Plaintiff may file a second amended complaint. The Court is mindful of the fact that Plaintiff has already amended his pleading once; that his amendment multiplied dramatically the number of defendants, claims, and incidents at least loosely alleged to be at issue in this lawsuit; and that, although the majority of defendants have not yet appeared, been served, or had the opportunity to challenge the lawsuit, significant portions of the lawsuit as amended appear to be time-barred. Absent a further order of this Court, Plaintiff may not add further defendants, claims, or incidents in his second amended pleading that are not present in the Amended Complaint; although he may name any defendant previously identified by number or as a Doe defendant, provide factual elaboration of the

incidents in the Amended Complaint, and provide explanation of how his claims relate to the incidents alleged.[10] He may also choose to drop, narrow, or focus the defendants, claims, or incidents at issue.

If Plaintiff fails to timely file a second amended pleading, the Court will deem his Amended Complaint the operative pleading. If Plaintiff files a second amended pleading that exceeds the scope of leave to amend granted herein without further order of the Court, the Court may strike the second amended pleading.

### D. Service of Process

The City Defendants contend that Plaintiff: (1) did not timely effect service of the Complaint on the City; and (2) has not effected service of either the Complaint or the Amended Complaint against any of the individual Officer Defendants. ECF No. 81 at 9–13.

The City Defendants first argue that the City should be dismissed from the action because it was not served with process within 90 days of the filing of the Complaint on October 5, 2021, as required by Rule 4(m). *See* ECF No. 81 at 9. The City's argument for untimely service does not appear to account for the order of the Court of Appeals reversing this Court's dismissal of Plaintiff's lawsuit for failure to timely effect service. ECF No. 54. The Court of Appeals ordered, "On remand, the district court should forward a copy of Form 285 filed on March 18, 2022, a copy of the summons, and a copy of the complaint to the U.S. Marshal for service on the City of San Diego." *Id.* at 2. Upon issuance of the mandate, this Court entered an order as directed, and the USMS promptly effected service of Plaintiff's original complaint. ECF Nos. 55-57. That act of service may have been ineffective—based on the address for service provided by Plaintiff—but it was not

---

[10] The Amended Complaint attaches approximately almost two hundred pages of exhibits without discussing them in the Amended Complaint itself. To the extent that Plaintiff views these exhibits as reflecting facts that he wishes to allege, he should allege these facts directly in his second amended complaint.

untimely. Based on the record to date, the Court declines to dismiss the action against the City on the basis of untimely service of process.[11]

The City Defendants next contend that the individual officers and park ranger still have not been properly served with the Amended Complaint.[12] *Id.* Plaintiff amended his complaint on June 18, 2025. ECF No. 58. An amended summons was issued on July 7, 2025. ECF No. 61. On July 17, 2025, the Court appointed the USMS to effect service of the Amended Complaint. ECF No. 63. On July 23, 2025, Plaintiff filed an emergency motion requesting that the Court direct the Clerk of Court to "prepare and forward the required copies of the First Amended Complaint," summons, and "all other necessary service documents" to the USMS. ECF No. 64 at 4. The Court granted Plaintiff's motion and directed as follows:

> Per the Court's July 17, 2025 Order, Plaintiff is **DIRECTED to** complete and file a Form 285 for each Defendant named in his FAC as completely as accurately as possible on or before **August 7, 2025**. Upon receipt, the Clerk's Office is **DIRECTED** to transmit the completed Form 285s along with the copies of the summons and Plaintiff's FAC, to the U.S. Marshal Service for service. Plaintiff is not required to print or forward copies of his FAC and summons for service.

ECF No. 65 at 1–2 (emphasis in original). On July 30 and July 31, 2025, Plaintiff filed his Form 285s on the docket. ECF Nos. 66–68. The USMS promptly effected service based on the addresses provided on Plaintiff's Form 285s. ECF Nos. 70–75, 78–79. The Court's docket reflects that process was left for several individuals with a "police records clerk," ECF Nos. 70–75, or with a "supervisor," ECF No. 78, but Plaintiff has not demonstrated

---

[11]    The City Defendants' motion notes that the City was duly served with Plaintiff's FAC on August 13, 2025. ECF No. 81 at 10.

[12]    The City Defendants' motion purports to attach a declaration reflecting that the individual City Defendants have not been served. *See* ECF No. 81 at 13 ("As attested to by SDPD Detective Claudia Shadoah in Exhibit A, the SDPD City Officer Defendants have not been served either directly or indirectly or according to City policies. Ex. A."). There is no Exhibit A.

that these persons were authorized to accept service for the individual Defendants. Indeed, the Court notes that on August 14, 2025, Plaintiff filed a motion with this Court to again effect service of his Amended Complaint against the City and the individual Officer Defendants. ECF No. 77.

Based on the record to date, the Court concludes that the individual officers have not been properly served. For good cause shown, and absent the filing of any opposition, the Court grants Plaintiff's motion for order directing re-service by the USMS. ECF No. 77. After Plaintiff has either filed a second amended complaint, or fails to do so timely, or otherwise indicates to the Court that he declines to amend his pleading, the Court will enter a further order directing service of process by the USMS as to the remaining defendants in the case. Plaintiff is advised that he will be required to provide the correct addresses for service of initial process.

### E.    Motion to Strike

The City Defendants' motion to dismiss also argues that the exhibits to the Amended Complaint should be stricken. ECF No. 81 at 19–20. The City Defendants argue in conclusory terms that the exhibits "may be relevant to [Plaintiff's] causes of action, but are immaterial to the viability of Plaintiff's FAC and should be struck." *Id.* at 20. This argument appears to assume that the Court agrees with the City Defendant that the Amended Complaint is not viable. The Court has not so ruled, and declines to strike the exhibits to the Amended Complaint.

## IV.    CONCLUSION

For the foregoing reasons:

1.    The City Defendants' motion to dismiss [ECF No. 81] is **GRANTED** in part and **DENIED** in part. The Court **DISMISSES**: (a) all claims against Zadok Othniel; (b) Claims Four, Six, Nine, and Ten against the City and San Diego Police Department Officers Brian Moreno, Felix Campante, Geoffrey Decesari, MacKenzie Fuggett, Tyler Hamby; (c) Claim Eight against the City; and (d) Claim Nine against all City Defendants. The Court also rules that Plaintiff has not at this time properly effectuated service of

process of the Complaint against the City and the Complaint and Amended Complaint against San Diego Police Department Officers Brian Moreno, Felix Campante, Geoffrey Decesari, MacKenzie Fuggett, and Tyler Hamby.

2.    Culver's motion to dismiss [ECF No. 82] is **GRANTED**. All claims against Culver are **DISMISSED**.

3.    Allied's motion to dismiss [ECF No. 83] is **GRANTED**. All claims against Allied are **DISMISSED**.

4.    Downtown Partnership's motion for judgment on the pleadings [ECF No. 95] is **GRANTED**. All claims against Downtown Partnership are **DISMISSED**.

5.    Plaintiff is **GRANTED** leave to file a second amended complaint within *forty-five (45) days* of the date of this order. The scope of leave to amend is expressly limited, as described above in the order.

6.    Plaintiff's motion to effect re-service [ECF No. 77] is **GRANTED**. The Court will issue a further order after Plaintiff files a second amended complaint, fails to timely make such a filing, or indicates that he does not intend to make such a filing.

**IT IS SO ORDERED**.

Dated:  November 21, 2025

_____
Hon. Robert S. Huie
United States District Judge